IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| GEORGE WALLACE, | ) | CASE NO.5:18-CV-02637 |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| | ) | |
| Defendant. | | |

**Introduction**

Before me[1] is an action by George Wallace seeking judicial review of a 2018 decision by the Commissioner of Social Security that denied Wallace's application for disability insurance benefits and supplemental security income.[2] The Commissioner has filed an answer[3] and transcript of the administrative proceedings.[4] Under terms of my

---

[1] The parties have consented to my exercise of jurisdiction. ECF No. 20.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 10.

1

initial order,[5] the parties have briefed their arguments[6] and filed supporting fact sheets and charts.[7] They have participated in a telephonic oral argument.[8]

For the reasons that follow, the decision of the Commissioner will be found not to be supported by substantial evidence and so the matter will be remanded.

**Facts**

The relevant facts are simply stated. Wallace, who was 42 years old at the time of the hearing, attended school through the ninth grade and was employed in a variety of occupations, such as die setter, metal fabricating supervisor, injection machine operator and short order cook.[9] Wallace claims that pain from a back injury in 2013 triggered debilitating anxiety and panic attacks that have increased in frequency and severity despite medication and treatment.[10] He maintains that these anxiety and panic attacks force him to remain on his couch a couple of days a week and allow him to leave his apartment only four times per month.[11]

The ALJ found the following severe impairments: Degenerative changes of the lumbar spine and sacroiliac joints, joint effusion of the right knee, syncope, pseudo-seizure and seizure disorder, depressive disorder, anxiety disorder, obsessive-compulsive disorder,

---

[5] ECF No. 11.
[6] ECF Nos. 12 (Wallace); 16 (Commissioner).
[7] ECF Nos. 12, Appendix 1, 2 (Wallace); 19 (Commissioner).
[8] ECF No. 21.
[9] Tr. at 21, 27.
[10] Tr. at 21.
[11] *Id*.

and panic disorder with agoraphobia.[12] The ALJ, however, further found that none of these impairments or combination of impairments met or equaled a listed impairment.[13]

After reviewing the claimant's testimony, the medical records and the functional opinions of both treating sources as well as state agency consultants,[14] the ALJ gave only little weight to the opinions from Wallace's medical sources but gave "considerable partial weight" to the opinions of the state agency consultants.[15] In that regard, the ALJ concluded that new and material evidence since the date of those opinions warranted some additional limitations.[16] In the end, Wallace was given an RFC for medium work with some physical and mental limitations.[17]

In light of that RFC, Wallace was found not capable of performing his past relevant work as a laborer.[18] Following testimony from a VE, and analyzed under the terms of the RFC, the ALJ concluded that Wallace could perform certain medium work unskilled occupations, such as cleaner, laundry worker and kitchen helper.[19]

**Analysis**

The single issue presented for judicial review is whether the ALJ improperly gave little weight to the mental functional opinion of Wallace's treating physician which then

---

[12] *Id*. at 17.
[13] *Id*. at 18.
[14] *Id*. at 21-26.
[15] *Id*. at 26.
[16] *Id*.
[17] *Id*. at 20.
[18] *Id*. at 27.
[19] *Id*. at 28.

3

resulted in a deficient RFC.[20] This question is here considered under the well-known substantial evidence rubric.

In his opinion, the ALJ summarized his handling of the functional opinions of Wallace's treating sources as follows:

- [W]hile NP [nurse practitioner] Ragon and Drs. Kuentz and Swope have opined that the claimant's anxiety and other affective impairments cause extreme limitations in the claimant's mental functioning, their documented observations and clinical findings fail to support such limitations. The claimant is routinely documented to appear "anxious," but pleasant, cooperative and able to communicate his history, symptoms and other information in [a] relevant and appropriate manner. His emergency room presentations for symptoms he attributes to anxiety/panic are almost universally attributed to other causes, his presentations are similarly documented to reflect the claimant's calm, cooperative demeanor, and his behaviors while undergoing work-up[s] are inconsistent with the severity of the symptoms reported.[21]

Wallace here concedes that "some of the examinations and observations by [Wallace's] treatment providers may have been normal," but he argues that on many other occasions "they documented "the very symptoms and severity [Wallace] alleges."[22] To that end, he points to treatment notes from his emergency room visits and physician visits that record observations of depression, anxiety or panic symptoms.[23] He also cites the functional opinion of Dr. Swope, who put significant reliance on Wallace's GAF scores as proof evidencing the severity of the symptoms.[24] He finally notes that the most recent

---

[20] ECF No. 12 at 1.
[21] Tr. at 26.
[22] ECF No. 12 at 14.
[23] *Id.* (citing record).
[24] *Id.* at 15.

4

provider – NP Ragon – had stated that Wallace had "significant residual symptoms of anxiety" that required the assistance of an outside case manager to insure that Wallace appropriately managed his treatment.[25]

I note initially that while rejecting the most recent evaluation by NP Ragon (April 2018) as coming from an unacceptable medical source,[26] the ALJ then gave "considerable partial weight"[27] to the (October 2016) functional opinion of a state reviewing psychologist.[28] In that regard, it's important to observe first that the ALJ himself noted that "[o]n April 9, 2017, the claimant re-entered counseling, his psychological care having been limited for nearly a year to short med-som sessions with NP Ragon."[29]

In other words, without a clear explanation of reasons, the ALJ gave greater credit to a report from a one-time reviewer who never examined Wallace and only saw information from the time Wallace was getting limited psychological care and rejected a detailed report developed by a medical source who directly examined Wallace multiple times over a full year after Wallace began getting regular psychological care.

---

[25] *Id.* (citing record).
[26] That term should be understood only in the context of a source not entitled to a presumption of controlling weight. *Engebrecht v. Comm'r*, 572, Fed. App'x 392, 399 (6th Cir. 2014)(internal citations omitted). The ALJ improperly states (tr. at 26) that such opinions can never be given controlling weight. In fact, they are to be evaluated for weight according to the applicable factors such as length of treatment relationship, etc. and then given a weight, together with an explanation as to the reasons for that weight. *Cruse v. Comm'r.*, 502 F.3d 532, 541 (6th Cir. 2007).
[27] The ALJ gave no definition for this term, which appears to be unique to this opinion.
[28] Tr. at 26 (citing record).
[29] *Id.* at 25.

It is possible to give greater weight to an earlier reviewing source as opposed to a later examining source.[30] However, in such cases, it is incumbent on the ALJ to acknowledge this fact on the record and explain why he is giving greater weight to "an opinion that is not based on a review of the complete case record."[31]

Here, I observe that the evidence cited in the ALJ's opinion to show that Wallace was doing well psychologically – as opposed to the opinion of his treating medical sources – overwhelmingly pre-date April 2017 when he re-entered regular psychological counseling[32] and July 2017 when "the claimant's psychological care was transferred from Dr. Swope to Marissa Ragon, CNP …."[33] Indeed, the specific citations to Wallace doing well psychologically date are one report in September 2015[34] and include three examples in 2016[35] and three in 2017 prior to NP Ragon beginning her time of treatment.[36] After beginning exclusive full-time psychological treatment with NP Ragon in July 2017, the ALJ cites only three examples of Wallace's condition being in anyway contradictory of NP Ragon's 2018 functional opinion: (1) a report of a neurological examination in August 2017 that showed no impairment of memory;[37] (2) a report from NP Ragon at the same

---

[30] *Blakely v. Comm'r*, 581 F.3d 399, 409 (6th Cir. 2009).
[31] *Id.* (internal quotation and citation omitted).
[32] Tr. at 25.
[33] *Id*. at 24.
[34] *Id*. at 21.
[35] *Id*. at 22 ("some progress"); 23 (anxiety diagnosis "neither made nor deemed contributory" to ER visit); 23 (discharged in "stable condition").
[36] *Id*. at 24 (daily panic attacks generally "manageable"); 24 (follow-up report showed improved GAQF score); 24 (notes from visit to primary care physician show Wallace "sleeping well" with "essentially unremarkable findings").
[37] *Id*. at 25.

time that Wallace demonstrated "full and bright affect";[38] and (3) a 2018 emergency room visit where an examination concluded that Wallace was "in no distress and able to answer questions without difficulty."[39]

Given this evidence from the opinion itself, the claim that NP Ragon's opinion is contradicted by "routinely documented"[40] examples of a calm, cooperative demeanor – *i.e.*, no anxiety – is not consistent with the facts, and so does not constitute a good reason for preferring the older functional opinion of the state reviewer over the more recent one of NP Ragon. Moreover, even though the ALJ does admit that evidence coming into the record after the opinion of the state agency reviewer does require additional limitations in the RFC for posture, frequency driving and level of contact with others,[41] such a concession does not amount to a full consideration of NP Ragon's assessment that Wallace has extreme limitations with regard to interaction with others and in maintaining concentration, persistence and pace,[42] and so would likely be absent from work more than four days per month.[43]

**Conclusion**

---

[38] *Id.*
[39] *Id.* at 26.
[40] *Id.*
[41] *Id.*
[42] *Id.* at 754.
[43] *Id.* at 755.

Accordingly, for the reasons stated above, I find that the decision of the Commissioner is not supported by substantial evidence and so is reversed. The matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: December 30, 2019
<span style="float:right">s/William H. Baughman Jr.
United States Magistrate Judge</span>